**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

Case No.: ___________________

QIJUN CHEN,

Plaintiff,

v.

ABACUS GLOBAL MANAGEMENT, INC.,

formerly known as ABACUS LIFE, INC.,

Defendant.

______________________________________/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Qijun Chen ("Chen"), through undersigned counsel, sues Defendant Abacus Global Management, Inc., formerly known as Abacus Life, Inc. ("Abacus"), and alleges:

## NATURE OF THE ACTION

1. Chen's Employment Agreement provided severance if he resigned for Good Reason after Abacus failed to cure a material and sustained diminution of his duties or responsibilities within thirty business days of notice. When Chen invoked that provision in July 2026, Abacus responded within the hour by demanding his

investment models and data and conditioning any discussion of his Good Reason notice and severance claim on their delivery. Abacus then directed the transfer of his work and cut off access he needed to perform his duties, telling Chen a meeting on his Good Reason request would follow only to declare his resignation voluntary days later without holding one. Chen withdrew the proposed effective date of his resignation and stated that he remained ready to work through the contractual cure period. Abacus refused, insisted on the earlier proposed resignation date, and denied severance, disputing the diminution while also asserting that Chen had not given Abacus the very cure period it had declined to use.

2. Chen brings this action to recover the severance benefits Abacus promised him and now refuses to pay.

**PARTIES, JURISDICTION, AND VENUE**

3. Chen is a citizen of China and a lawful permanent resident of the United States, domiciled and residing in New Jersey. He primarily performed his work for Abacus there.

4. Abacus is a Delaware corporation with its principal place of business in Orlando, Florida, and is a citizen of Delaware and Florida. Formerly named Abacus Life, Inc., it is the Employer identified in Chen's Employment Agreement.

5. This Court has jurisdiction under 28 U.S.C. § 1332(a)(2) because this action is between a citizen of China domiciled in New Jersey and a corporation

that is a citizen of Delaware and Florida. The amount in controversy exceeds $75,000, exclusive of interest and costs: Chen seeks $75,000 in salary severance, plus a pro rata annual bonus, continued health-coverage payments, and equity-related relief.

6. This Court has personal jurisdiction over Abacus because its principal place of business is in Florida.

7. Venue is proper under 28 U.S.C. § 1391(b)(1) and (2) because Abacus resides in this District and made the challenged employment and severance decisions here. Its headquarters are in Orange County, within the Orlando Division under Local Rule 1.04.

## THE EMPLOYMENT AGREEMENT

8. Chen and Abacus entered into a written Employment Agreement in 2024 (the "Agreement"), a true and correct copy of which is attached as Exhibit A and incorporated herein by reference. Chen signed and performed under it; Abacus accepted his services and treated the Agreement as binding, including in its denial of severance. The Agreement remained in effect throughout the events alleged here.

9. Section 3 employed Chen as Vice President, initially reporting to the CEO and Chief Capital Officer, with the duties and authority customary for that position. Chen led portfolio management for Abacus's free-cash-flow investment

business (“FCF”). His responsibilities included investment strategy and methodology, implementation, discretionary adjustments, and presentations to clients and the FCF team.

10. At the time of his separation, Chen’s annual Base Salary under the Agreement was $300,000.

11. Upon a qualifying separation, Section 9(d) provides three months of Base Salary, a pro rata annual bonus based on actual performance, and specified additional benefits. It also provides that unvested equity awards continue to vest during the three-month Severance Period to the extent they would have vested had Chen remained employed through the end of that period.

12. The annual bonus provisions include a 100% target and an Annex A minimum of 25%, subject to the stated terms and adjustments. Section 9(d) preserves a pro rata bonus upon a qualifying separation.

13. Section 25 defines Good Reason to include Abacus’s material breach or a material and sustained diminution in Chen’s title, duties, or responsibilities. Chen must notify the Board within thirty days after first knowledge of the grounds. Abacus then has thirty business days to cure, and resignation must take effect no later than thirty days after that period expires.

14. Section 8 separately requires thirty days’ advance written notice of resignation and of an employer termination without Cause. Section 11 specifies

notice-delivery methods, including overnight courier, and an Orlando notice address.

15. Section 9(f) requires Abacus to provide a release form and Chen to deliver an executed, irrevocable release within sixty days after termination. The Cash Severance Payment and health-coverage payments commence as provided in that section after the release becomes irrevocable. Section 9(g) precludes offsets for subsequent earnings.

16. Section 19 provides that Delaware law governs the Agreement.

**DIMINUTION OF CHEN'S ROLE AND THE JULY 13 NOTICE**

17. On June 29, 2026, Abacus hired Cody Raulerson as Executive Vice President and Portfolio Manager without prior notice to Chen or an explanation of how the appointment affected his responsibilities. William McCauley, Chief Operating Officer, had arranged for other FCF personnel to meet with Raulerson concerning product development and onboarding, and FCF personnel participated in interviewing and vetting him without Chen's knowledge or involvement.

18. Before Raulerson joined, Abacus had canceled at least six consecutive standing Thursday FCF meetings—a regular forum for internal planning, team decisions, and product-strategy discussions—without providing Chen a replacement forum. Chen nevertheless remained principally responsible for the existing FCF portfolios and client presentations.

19. On July 6, Raulerson was added to the existing "Abacus FCF Portfolio Mgmt" group chat, which the FCF portfolio-management team used to coordinate portfolio-development work and client meetings. Raulerson then began proposing changes to FCF's investment process and infrastructure, including its data, workflows, and model parameters and weights. He requested daily shadowing of Chen's portfolio-management work and access to the research supporting FCF's investment decisions. On July 9, Chen and Raulerson discussed Raulerson's anticipated responsibilities, including heading Product Management and stepping into a portfolio-management role across the existing FCF funds Chen managed. Chen had provided access to the investment codebase and answered detailed questions about the investment process.

20. Before Chen submitted his Good Reason notice on July 13, Raulerson had developed and presented to the FCF team, including Chen, an "Evidence-Based Investing" framework addressing the investment process and product-development roadmap for the existing FCF platform. Raulerson announced plans to present it to the Board that week. Chen had not participated in developing the framework, although he remained principally responsible for the affected portfolios and investment process.

21. Before June 2026, Chen developed and systematized the investment process underlying Abacus's FCF strategies, led strategy development and

implementation, and oversaw ETFs and separately managed accounts. Abacus materially and persistently diminished those responsibilities by excluding him from investment planning, process development, and product strategy while integrating Raulerson into those functions, even as it kept Chen principally responsible for the existing portfolios and client presentations.

22. On July 13, Chen emailed his resignation and Good Reason notice to Human Resources, copying McCauley and Jay Jackson, Chairman and Chief Executive Officer. Chen notified Abacus of the asserted Good Reason grounds within thirty days after first learning of them. He also requested the company's updated mailing address to send a hard copy.

23. Although the notice bore an internal date of August 13 and a proposed resignation date of August 14, Chen transmitted it by email on July 13, 2026 — the same day Abacus received and acted upon it.

24. The notice identified Raulerson's involvement in Chen's investment process and Chen's exclusion from internal planning, invoked Good Reason under Section 25, and requested Section 9(d) benefits.

**ABACUS IMPLEMENTS TRANSITION AND REMOVES ACCESS**

25. Less than an hour after receiving the notice, McCauley demanded Chen's model code, research, and data sources. The next day, he advised that he

and Jackson would discuss Chen's request, adding, "we can connect next week on the Good Reason severance once all requested information has been provided."

26. That day, Raulerson told Chen that he and Tom MacDonald, Portfolio Analyst, would take over Chen's responsibilities during the next thirty days. Chen responded that he was willing to participate in transition sessions but asked for an agenda in advance so the time would be productive.

27. On July 14, Chen told McCauley in writing that the Good Reason discussion "is not sequential to the handover per the contract, as they are separate matters," and that he did not view the handover "as a precondition for starting that conversation."

28. On July 14, McCauley told Chen that "you should not be attending the FCF Board meeting tomorrow morning."

29. The same day, Chen reported that his office computer appeared to be offline. From July 14 through July 20, Chen repeatedly asked Abacus to restore his remote access to his office computer and the files stored there; access was not restored until his third request, on July 20.

30. On July 20, Chen sent Abacus a detailed written account of his position. He stated that he had cooperated with specific, clearly scoped requests, that the handover and the Good Reason discussion were "separate tracks," and that

he did not accept the handover as a precondition for that discussion. He asked Abacus to provide a timeline for responding to his Good Reason request.

31. McCauley responded the same day: “I agree that the Good Reason discussion is a separate track and we are reviewing your Good Reason request.” He stated Abacus would “set up a meeting to discuss the Good Reason request in the coming weeks.”

32. Access was restored that day, only for Abacus to remove Chen from its GitHub organization and cut off his Adobe access three days later and disable his RemotePC account on July 24.

33. Those cutoffs prevented Chen from using the investment models, code, and data needed to generate and validate trade files, analyze and monitor portfolios, perform rebalancing and index generation, and conduct investment research and product development.

34. Chen continued assisting with the transition. He provided an operational walkthrough, written summaries, code, data, and a transition document. MacDonald acknowledged receiving the code and data files on July 20. Chen continued answering technical and portfolio questions through August 3, including explaining his rebalancing methodology and investment decisions.

## CORRECTIVE NOTICE, REFUSAL TO CURE, AND DENIAL OF BENEFITS

35. On July 23, Abacus sent Chen a letter denying that he had established Good Reason, asserting that his July 13 notice failed to satisfy Section 25's procedural requirements, and stating that August 14 "will be the last day of your employment with Abacus" because, in Abacus's characterization, his resignation was without Good Reason.

36. On July 30, Chen's counsel sent an amended Good Reason notice and cure demand by Federal Express to General Counsel at the Section 11 address, responding to Abacus's July 23 letter. Abacus acknowledged receipt on August 3.

37. The letter explained that Chen had selected August 14 in a good-faith effort to satisfy the Agreement's general 30-day notice provision, without waiving his Good Reason rights or the cure process it had already invoked. It withdrew and superseded the August 14 date to preserve the notice-and-cure process, maintained the July 13 grounds, and stated that Chen remained ready to continue his service through the cure period.

38. The letter stated that Abacus had excluded Chen from material activity, begun transition efforts, and revoked his access to the systems needed to perform his work. It demanded restoration of Chen's access and authority and notice of the steps Abacus would take to cure.

39. The July 30 letter also gave notice of the recent access revocation as an additional interference with Chen's duties, subject to its own notice-and-cure requirements.

40. On August 14, Abacus acknowledged the notices but again denied Good Reason and refused to extend Chen's employment beyond that date.

41. Abacus again asserted reliance on August 14 and denied benefits because Chen had not provided thirty business days to cure. It identified no restoration of the disputed authority or access.

42. Abacus ended Chen's employment on August 14, 2026, despite his withdrawal of that date and continued readiness to work.

43. Abacus has refused severance and has not provided the Section 9(f) release.

44. Chen remains ready and willing to execute and timely return a release conforming to Section 9(f), which requires Abacus to provide the form. Abacus has refused to provide it while denying Chen's entitlement to severance, preventing him from satisfying the release condition.

45. Abacus did not cure the diminution before separation. It transferred Chen's work, excluded him from the FCF Board meeting, and did not restore the authority, access, or role relative to Raulerson that Chen identified in his notice. After denying Chen's Good Reason request on July 23, Abacus continued the

transition, removed Chen's remaining systems access, again denied Good Reason on August 14, and declined to permit Chen to remain employed through the cure period, instead insisting that his employment end on August 14.

**CONDITIONS AND RESULTING INJURY**

46. Chen complied with Section 7 of the Agreement and performed his other material contractual obligations except where performance was prevented or excused as alleged.

47. The July 13 notice reached Abacus's Chairman and CEO and was acted upon, including through Abacus's July 23 written response addressing its Good Reason grounds; the July 30 notice used the contractual courier method. These communications supplied the required notice. Alternatively, Abacus waived objections to delivery or routing by accepting and acting on the notice while addressing its Good Reason grounds.

48. Chen withdrew the proposed date and remained ready to work through the cure period. Abacus's refusal, removal of access, and insistence on August 14 prevented completion of that period. Noncompletion is excused to the extent caused by that conduct.

49. All conditions precedent have been satisfied or are excused as alleged. Alternatively, Chen seeks an order requiring Abacus to provide the release and

allow Chen a reasonable opportunity to execute the release and permit any applicable revocation period to expire before payment.

50. Chen seeks $75,000 in salary severance, his pro rata 2026 bonus, continued health-coverage payments, and, under Count II, the equity scheduled to vest on December 13, 2026, or damages for its loss, subject to the Agreement's payment terms and available remedies for repudiation.

51. Abacus denies any obligation to provide a release or pay future benefits. The 2026 bonus is payable on the contractual schedule, generally with executive bonuses and no later than March 31, 2027.

**COUNT I: BREACH OF CONTRACT — GOOD REASON BENEFITS**

52. Chen incorporates paragraphs 1 through 51.

53. The Agreement is enforceable. The material, sustained diminution of Chen's duties and responsibilities constituted Good Reason under Section 25 and a material breach of Section 3. Chen invoked Good Reason and satisfied the applicable conditions, or their nonperformance is excused as alleged.

54. Abacus breached and repudiated Section 9(d) by denying Chen's claimed Severance Benefits. If Chen is determined to be entitled to Severance Benefits, Abacus must provide the release required by Section 9(f) and may not rely on Chen's nonexecution of a release that Abacus refused to provide. Chen seeks declaratory relief concerning that condition in Count IV.

55. As a result, Chen lost the contractual severance benefits and seeks damages in an amount to be determined.

WHEREFORE, Chen requests contractual damages, prejudgment and postjudgment interest as allowed by law, taxable costs, and other appropriate relief.

**COUNT II: BREACH OF CONTRACT — EMPLOYER TERMINATION**

**(Pleaded in the alternative)**

56. Chen incorporates paragraphs 1 through 51.

57. Alternatively, Chen's July 30 withdrawal of the August 14 date and continued readiness to work through the cure period were legally effective. Section 25 does not define a Good Reason resignation as an ordinary, unconditional resignation. Rather, it establishes a multi-step process in which Chen's notice of Good Reason grounds triggers a thirty-business-day cure period before Chen may be deemed to have resigned for Good Reason. Nothing in Section 25 treats a proposed effective date that precedes the cure period's conclusion as fixed or irrevocable. Instead, Section 25 makes the timing of a Good Reason resignation dependent on whether, and when, Abacus's cure period concludes without cure. That process was still running when Chen withdrew the August 14 date and remained ready to work through its completion.

58. Nor had Abacus taken any irrevocable action in reliance on the August 14 date by the time Chen withdrew it. As late as July 20, Abacus told Chen

that his Good Reason request remained under review, that Abacus would convene a meeting to discuss it, and that the transition and the Good Reason discussion were separate matters. The reassignment of Chen's responsibilities to Raulerson and MacDonald predated that statement and, on Abacus's own account, proceeded independently of the Good Reason review rather than in reliance on any particular outcome of it. Abacus identifies no step it took between July 20 and July 30 that changed its position or that would have been undone by allowing Chen to remain through the cure period.

59. By requiring Chen's employment to end on August 14 after he withdrew that date — a position Abacus first asserted on July 23 — Abacus terminated him without Cause and without the thirty days' prior written notice Section 8 required for a termination without Cause. Abacus gave no Notice of Termination invoking Cause or satisfying that notice requirement.

60. Abacus breached Section 8 by ending Chen's employment without that required notice. That breach concerns the timing of Chen's separation. To the extent Count II establishes that Abacus terminated Chen without Cause and that Chen is entitled to the Severance Benefits provided by Section 9(d), Abacus must provide the release required by Section 9(f) and allow Chen the contractual opportunity to execute it. Chen seeks declaratory relief concerning that condition

in Count IV. Chen's claim for damages arising from Abacus's independent breach of Section 8's notice requirement is pleaded separately and in the alternative.

61. Chen holds an outstanding restricted stock unit award under the Incentive Plan defined in Section 25 of the Agreement — the Abacus Life, Inc. 2024 Amended and Restated Long-Term Equity Compensation Incentive Plan — a tranche of which is scheduled to vest on December 13, 2026. The precise number, terms, and value of that award are reflected in the Incentive Plan, Chen's award agreement, and Abacus's equity-administration records, which are within Abacus's possession, custody, or control.

62. As a direct and independent result of Abacus's failure to provide the thirty days' written notice required by Section 8, Chen lost the opportunity to remain employed through September 13, 2026. Had Abacus complied with Section 8 and terminated Chen without Cause effective no earlier than September 13, the resulting three-month Severance Period under Section 9(d) would have run through December 13, 2026, capturing the equity award scheduled to vest on that date. Chen therefore seeks damages for Abacus's independent Section 8 notice breach measured by the value of that lost vesting or, alternatively, by the compensation Chen would have received during the thirty-day notice period Abacus failed to provide.

WHEREFORE, Chen requests contractual damages in the alternative to Count I, including damages resulting from Abacus's independent breach of Section 8, prejudgment and postjudgment interest as allowed by law, taxable costs, and such other nonduplicative relief as the Court deems proper.

## COUNT III: BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

**(Pleaded in the alternative)**

63. Chen incorporates paragraphs 1 through 51.

64. This Count is pleaded in the alternative to Counts I and II under Federal Rule of Civil Procedure 8(d)(3). It applies only to the extent the Court determines that the Agreement does not expressly resolve whether Abacus could: (a) treat Chen's proposed August 14 date as irrevocable after Chen invoked Good Reason; (b) refuse to restore Chen's ability to perform; (c) transition his work and remove his systems access during the cure period; (d) decline to conduct the promised Good Reason review; and (e) deny benefits based on the resulting inability to complete the cure sequence.

65. Delaware law, which governs the Agreement under Section 19, implies in every contract a covenant of good faith and fair dealing. To the extent the Agreement does not expressly resolve the matters described above, that covenant required that Abacus not exercise or administer the Agreement's notice-

and-cure provisions arbitrarily, in bad faith, or in a manner that prevented Chen from receiving the benefit of the contractual Good Reason process.

66. Abacus breached that implied obligation. Within an hour of Chen's July 13 notice, Abacus conditioned a discussion of his Good Reason claim on Chen's delivery of investment models, code, data, and other transition materials. On July 20, after Chen explained that the transition and Good Reason matters were separate tracks, McCauley agreed that "the Good Reason discussion is a separate track," stated that Abacus was reviewing Chen's request, and represented that Abacus would "set up a meeting to discuss the Good Reason request in the coming weeks." By that time, Abacus had told Chen that Raulerson and MacDonald would assume his responsibilities during the ensuing thirty days and had directed Chen to transfer operational information and portfolio-management materials to them. Chen continued cooperating with the transition while the Good Reason review was ostensibly pending. Abacus never conducted the represented meeting. Instead, it denied Good Reason on July 23, fixed August 14 as Chen's last day, and proceeded to remove Chen's remaining systems access—without conducting the Good Reason review and meeting it had represented it would undertake, and without identifying or undertaking measures to restore or evaluate the authority, access, and responsibilities Chen had identified in his notice.

67. As a result, Chen has been damaged in an amount to be determined, measured by the severance and equity-related benefits alleged above.

WHEREFORE, Chen requests, in the alternative to Counts I and II, contractual damages, prejudgment and postjudgment interest as allowed by law, taxable costs, and such other nonduplicative relief as the Court deems proper.

## COUNT IV: DECLARATORY RELIEF — RELEASE AND PROSPECTIVE BENEFITS

68. Chen incorporates paragraphs 1 through 51. This Court has diversity jurisdiction; 28 U.S.C. §§ 2201–2202 authorize declaratory relief.

69. An actual controversy exists over the Section 9(f) release condition and Abacus's obligation to pay severance benefits, including the pro rata 2026 annual bonus and, under Count II, the equity scheduled to vest on December 13, 2026. Abacus's August 14, 2026 letter denied Chen's entitlement to those benefits. Chen seeks a present determination of the parties' obligations, including those with future contractual payment dates.

70. Abacus's refusal to provide a release prevents Chen from completing that condition. The parties require a determination of their obligations before the remaining payment dates.

71. Chen seeks declarations that Abacus must provide the Section 9(f) release and allow Chen a reasonable opportunity to execute it and permit any

applicable revocation period to expire, or that the condition is excused to the extent Abacus prevented its completion; that Abacus must pay benefits not yet due, including the pro rata 2026 bonus, on the applicable contractual schedule; and, if Chen prevails on Count II, that Abacus must honor the Section 9(d) vesting protection applicable to the equity scheduled to vest on December 13, 2026.

WHEREFORE, Chen requests a declaration of the parties' rights and obligations as set forth above, such further necessary or proper relief under 28 U.S.C. § 2202, taxable costs, and no duplicate recovery under Counts I, II, or III.

**DEMAND FOR JURY TRIAL**

Under Federal Rule of Civil Procedure 38, Chen demands a jury trial on all issues so triable.

Respectfully submitted,

**BRENTON LEGAL P.A.**

By: /s/ *Ryan C. Brenton*
Ryan C. Brenton
Florida Bar No. 107675
1070 E. Indiantown Rd., Suite 400
Jupiter, FL 33477
Telephone: (954) 639-4644
rcb@brentonlegal.com
*Counsel for Plaintiff*